# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
)
            Plaintiff, )      CIVIL ACTION NO. 06-1211 (RBW)
      v. )
)
ALLSTATE PAINTING & CONTRACTING CO. )
  f/k/a Allstate Painting & Sheeting Co. *et al.* )
)
          Defendants )

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff, the International Painters and Allied Trades Union Industry Pension Fund ("Pension Fund" or "Plaintiff"), respectfully moves this Court for entry of judgment by default against Defendants, Allstate Painting & Contracting Co. f/k/a Allstate Painting & Sheeting Co. ("Company") and Elias Kafantaris ("Individual Defendant" and jointly with Company, "Defendants"), jointly and severally, in the amount of $427,896.15, which includes contributions due for the period January 2002 through August 2006, interest, liquidated damages, audit costs, late fees and attorneys' fees and costs incurred by the Pension Fund pursuant to 29 U.S.C. §185(a) and 1132(g)(2)(A) through (D), and for injunctive relief.

In support of this Motion, Plaintiff relies upon the allegations in its Complaint, the Declaration of Thomas Montemore[1] and the Declaration of Kent Cprek.[2]

---

[1]     The Declaration of Thomas Montemore ("Montemore Declaration") is attached to this Motion as Exhibit 1. The exhibits referenced in the Montemore Declaration are attached as Exhibits 2-5.

[2]     The Declaration of Kent Cprek ("Cprek Declaration") is attached to this Motion as Exhibit 6. The exhibit referenced in the Cprek Declaration is attached to this Motion as Exhibit 7.

172665_1.DOC

The grounds for this Motion are as follows:

1.       Prior to the commencement of this action, the Plaintiff attempted to resolve this delinquency in an amicable manner.

2.       The requested payments were not received and the Complaint in this matter was filed on June 30, 2006. The Complaint was served on the Defendants on July 12, 2006 as appears from the Affidavit of Service duly filed with the Court.

3.       No Answer to the Complaint has been filed by the Defendants.

4.       On August 2, 2006, Plaintiff filed a Request to Clerk to Enter Default against the Defendants pursuant to Fed. R Civ. P. 55(a). A copy was sent via first-class mail, postage prepaid, to the Defendants.

5.       On August 2, 2006, the Clerk of the Court entered default against all Defendants.

6.       Defendants are neither infants nor incompetent people and the Individual Defendant is not in the military service.

**WHEREFORE**, Plaintiff seeks the following relief:

(a)      Judgment entered as set forth in the proposed Order and Judgment attached to this Motion;

(b)    Such other and further relief as the Court deems just, necessary and appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:  s/ Kent Cprek_____
     KENT CPREK
     Bar No. 478231
     SANFORD G. ROSENTHAL
     Bar No. 478737
     The Penn Mutual Towers, 16th Floor
     510 Walnut Street, Independence Square
     Philadelphia, PA 19106-3683
     (215) 351-0615/0669
     Attorneys for the Fund

Date: September 28, 2006
OF COUNSEL:
Jessica L. Tortella
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND ALLIED )
TRADES INDUSTRY PENSION FUND )
 )
    Plaintiff, ) CIVIL ACTION NO. 06-1211 (RBW)
  v. )
 )
ALLSTATE PAINTING & CONTRACTING CO. )
 f/k/a Allstate Painting & Sheeting Co. *et al.* )
 )
    Defendants )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55(b) AGAINST DEFENDANTS.

Plaintiff, the International Painters and Allied Trades Union Industry Pension Fund

("Pension Fund" or "Plaintiff"), by its legal counsel, submits this Memorandum of Law in

Support of its Motion for Judgment by Default.[1]

The Plaintiff served its Complaint on Defendants, Allstate Painting & Contracting Co.

f/k/a Allstate Painting & Sheeting Co. ("Company") and Elias Kafantaris ("Individual

Defendant" and jointly with Company, "Defendants"), on July 12, 2006. To date, Defendants

have failed to answer the Complaint or otherwise defend this action. On August 2, 2006, Plaintiff

filed a Request For Entry of Default against Defendants pursuant to Rule 55(a) of the Federal

Rules of Civil Procedure. The default was entered against all defendants on or about September

8, 2006.

In light of Defendants' default and Defendants' continuing failure to appear or otherwise

---

[1] Attached to the Motion accompanying this Memorandum is the Declarations of Thomas Montemore ("Montemore Declaration") and Kent Cprek ("Cprek Declaration"). Also attached is a proposed form of Default Judgment.

defend, the Pension Fund is entitled to judgment by default against Defendants without a

hearing. Fed. R. Civ. P. 55(b); United States v. De Frantz, 708 F. 2d 310 (7th Cir. 1983);

Draisner v. Liss Realty, 211 F. 2d 808 (1954). Moreover, where defendants, such as those here,

fail to respond to the Complaint, all factual allegations in the Complaint are deemed admitted.

Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corp. v. Artect, Inc., 653 F 2d 61 (2d

Cir. 1981); U.S. ex. Rel. v. Carr, 567 F. Supp. 831, 840 (W.D. MI 1983). General allegations of

fact are also deemed true. Danning v. Lavin, 572 F. 2d 1386, 1388-89 (9th Cir. 1978)

(allegations of insolvency pled in general terms held sufficient to support a finding of fraudulent

conveyance or voidable preference).

Company is and has been party to collective bargaining agreements (singly or jointly

"Labor Contract") with the various local unions and district councils affiliated with the

International Union of Painters and Allied Trades, AFL-CIO-CFC ("International" or "Union").

See, Exhibit 1, Montemore Declaration, ¶5; Exhibit 2, a true and correct copy of relevant

provisions from the Labor Contract. Under the Labor Contract, Company is required to remit

fringe benefit contributions and other sums to Plaintiff. See, Exhibit 1, Montemore Declaration,

¶6; Exhibit 2, Labor Contract, at Art. VI. The failure to pay these fringe benefit contributions and

other amounts results in a delinquency to the Plaintiff.

In addition, prior to the commencement of this lawsuit the Pension Fund and the

Defendants entered into two settlements.  Pursuant to the terms of the January 31, 2006 and

February 17, 2006 Promissory Notes ("Notes") and a Personal Guarantees ("Guarantees")

executed on February 14, 2006 and March 3, 2006, respectively, by Individual Defendant, the

Pension Fund settled the delinquencies and was to receive payments totaling $71,052.08

($18,228.51 and $56,823.57) Defendants defaulted on both settlements as a result of their failure

to pay the installment payments. A true and correct copy of the January 31, 2006 and February 17, 2006 Promissory Notes and Personal Guarantees are attached as Exhibits 3-4.

## ARGUMENT

**A.    ENTRY OF JUDGMENT AGAINST DEFENDANTS, JOINTLY AND SEVERALLY, FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS ENTIRELY APPROPRIATE**

**1.    Company is Bound by the Terms and Conditions of a Collective Bargaining Agreement with the Union.**

Company is a party to a Labor Contract with the Union. See, Exhibit 1, Montemore Declaration, ¶5; Exhibit 2, Labor Contract. The Labor Contract provides for the payment of contributions to the Pension Fund for time worked by or paid to employees who perform work covered by its terms and conditions. See, Exhibit 1, Montemore Declaration, ¶6; Exhibit 2, Labor Contract, at Art. VI, Sec. 3. Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Pension Fund. Ibid. Under the Labor Contract, the Pension Fund also has the right to audit the signatory's payroll books and related records to determine that all of the required contributions have been paid. See, Exhibit 1, Montemore Declaration, ¶¶5, 14; Exhibit 2, Labor Contract, at Art. VI, Sec. 3; Complaint, Exh. 1, Art. VI, Sec. 6. Finally, under the terms of the Labor Contract, the employer agrees to be bound by the Agreement and Declaration of Trust of the Pension Fund ("Trust Agreement," attached as Exhibit 1 to the Complaint filed in this matter and incorporated by reference) and the International Painters and Allied Trades Industry Pension Plan ("Plan," attached as Exhibit 2 to the Complaint filed in this matter and incorporated by reference) and by all amendments thereto and actions taken by the trustees of the Pension Fund. See, Complaint, ¶¶ 5-7; Exhibit 1, Montemore Declaration, ¶¶ 5, 6; Exhibit 2, Labor Contract, at Art. VI, Sec. 3.

Furthermore, Section 515 of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §1145, provides:

> Every Employer who is obligated to make contributions to a
> bargained agreement shall … make contributions in accordance
> with … such agreement.

If an employer fails to make the contributions as required by the collective bargaining

agreement and Section 515 of ERISA, then the employer is subject to the provisions of Section

502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory

award of the following if a judgment is entered in the Pension Fund's favor pursuant to Section

515:

A.   the unpaid contributions;

B.   interest on the unpaid contributions;[2]

C.   an amount equal to the greater of:

    (i)   interest on the unpaid contributions; or

    (ii)  liquidated damages provided for under the plan in an
       amount not in excess of 20 percent (or such higher
       percentage as may be permitted under Federal or State law)
       of the amount determined by the Court under subparagraph
       (a);[3]

D.   reasonable attorneys' fees and costs of the action, to be paid by the
    Defendants; and

---

[2]    Section 10.12(b)(2) of the Plan sets the interest rate on delinquent contributions according to the Internal Revenue Service rate for delinquent taxes. See, Complaint, Exhibit 2.

[3]    ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of unpaid contributions due at the commencement of the lawsuit and those which become delinquent during the course of the litigation. See, Complaint, Exhibit 2. Article VI, Sec. 4 of the Trust Agreement also provides for the assessment of liquidated damages on contributions paid after the due date. See, Complaint, Exhibit 1.

      E.      such other legal or equitable relief as the court deems appropriate.

As stated above, Company has failed to submit contributions and/or remittance reports for the period January 2002 through August 2006. See, Exhibit 1, Montemore Declaration, ¶9. As a result, Plaintiff is entitled to judgment in at least the amount of $427,896.15.

      **2.      Individual Defendant Breached a Fiduciary Duty to the Pension Fund and is Therefore, Personally and Jointly and Severally Liable with Company for All Amounts Due.**

ERISA imposes strict fiduciary duties on persons with control over assets of an employee benefit plan. If the documents governing the fund (i.e., the trust agreement) identify unpaid fringe benefit contributions as plan assets, then employees of a delinquent employer who exercise control or authority over the unpaid contributions breach a fiduciary duty to the fund and may be held personally liable for all amounts owed. See, ITPE Pension Fund v. Hall, 334 F.3d 1011 (11th Cir. 2003); Laborers Combined Pension Fund of W. Pa v. Parkins, 2002 U.S. Dist. LEXIS 20035 (W.D.Pa. 2002).

An individual is a fiduciary under ERISA if that person exercises control or authority over plan assets. 29 U.S.C. § 1002(21)(A)(i); Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994); Galgay v. Gangloff, 677 F. Supp. 296, 300-01 (M.D.Pa. 1987), aff'd., 932 F.2d 959 (3rd Cir. 1991); Southern Elec. Health Fund v. Kelley, 308 F.Supp.2d 847 (M.D. Tenn. 2003); Teamsters Health & Welfare Fund of Phila. & Vicinity v. World Trans., Inc., 241 F.Supp.2d 499, 505 (E.D. Pa. 2003); PMTA-ILA Containerization Fund v. Rose, No. 94-5635, 1995 WL 461269, *4 (E.D.Pa. Aug. 2, 1995); Blatt v. Marshall, 812 F.2d 810, 812 (2d Cir. 1987); In re Philpott, 281 B.R. 271, 282 (W.D. Ark 2002); NYSA-ILSA Med. & Clinical Serv. Fund v. Catucci, 60 F.Supp.2d 194, 200 (S.D.N.Y. 1999); Connors v. Paybra Mining Co., 807 F.

Supp. 1242, 1245 (S.D.W.V. 1992); <u>Laborers Combined Funds of W. Pa. v. Cioppa</u>, 2004 WL 2563860, *3, (W.D. Pa. April 6, 2004).

a.    **All Contributions, Paid <u>and</u> Unpaid, are Plan Assets.**

Since ERISA does not define the term "plan asset," the courts instead have looked to the agreements creating the plan (i.e., the trust agreement and/or wage agreements) for guidance. <u>World Trans., Inc.</u>, 241 F.Supp.2d at 505 (citing <u>Galgay</u>); <u>Trustees of the Nat'l Elevator Ind. Pens., Health Benefit and Educ. Pension Fund v. Lutyk</u>, 140 F.Supp.2d 407 (E.D.Pa., 2001); <u>Parkins</u>, 2002 U.S. Dist. LEXIS 20035 at *6; <u>In re Philpott</u>, 281 B.R. at 282; <u>Catucci</u>, 60 F.Supp.2d at 200; <u>Connors</u>, 807 F. Supp. at 1246; <u>Young v. West Coast Indus. Relations Assoc., Inc.</u>, 763 F. Supp. 64, 75 (D. Del. 1991); <u>Cioppa</u>, 2004 WL 2563860 at *4.

In concluding that unpaid contributions are plan assets, the courts have often keyed in on certain buzzwords found in an employee benefit plan trust document. These courts have concluded that words or phrases such as "payable," "due and owing," "as shall be paid," or "accrued," when used in a trust document to describe employee benefit contributions, indicate that unpaid contributions constitute plan assets. <u>World Trans., Inc.</u>, 241 F.Supp.2d at 505-06 (holding that fringe benefit contributions are considered plan assets if under the trust agreement title is created at the time the contributions are "payable" to the fund); <u>Rose</u>, 1995 WL 461269 at *4 (holding that contributions are considered plan assets if the employee benefit plan trust document grants title to these assets at the time they are "due and owing" or "accrued"); <u>Parkins</u>, 2002 U.S. Dist. LEXIS 20035 at *6 (acknowledging that language similar to "due and owing" is sufficient to include unpaid contributions in the definition of plan assets); <u>Hanley v. Giordano's Restaurant</u>, No. 94-4696, 1995 WL 442143, *4 (S.D.N.Y. Jul. 26, 1995) (any outstanding or withheld contributions constituted plan assets at the time they were "due and owing"); <u>Galgay</u>,

677 F. Supp. at 301 (plan trust document with language defining plan assets as those which are "due and owing" confirmed that unpaid contributions were indeed plan assets); Lutyk, 140 F.Supp.2d at 411(language in the trust agreement which provides that the employee benefit plan shall consist of money "as shall be paid," creates a presumption that contributions, once they become due and owing, are plan assets). By defining plan assets to include monies that are "payable," "due and owing," "as shall be paid," or "accrued," the trustees of an employee benefit plan assure that employer contributions become plan assets whether or not they are actually paid to the fund.[4]

The language contained in the Trust Agreement of the Pension Fund in this case is consistent with the foregoing and leaves no doubt that the unpaid contributions owed by the Company are plan assets at the time the bargaining unit work is performed and the obligation to make fringe benefit contributions initially arises. The Trust Agreement specifically defines "Employer Contributions" as follows:

> The term 'Employer Contributions shall mean payments made *or to be made* to the [Pension] Fund by a Contributing Employer under the provisions of, or in accordance with, a [Labor Contract] and the Trust Agreement, or with regard to a Local Union..."

See, Complaint, Exhibit 1, Art. 1, Sec. 10.

By including the words, "or to be made" in the definition of Employer Contributions, the Trust Agreement clearly passes muster under the plan asset jurisprudence espoused above. The language employed by the Pension Fund Trustees confirms that paid and unpaid contributions are plan assets, the latter becoming an asset of the Pension Fund at the time the obligation to

---

[4]     At least one court has also held that unpaid contributions are also considered plan assets on the date the employee benefit plan receives remittance reports from the employer. World Trans., Inc., 241 F.Supp.2d at 506.

make fringe benefit contributions accrue. In other words, at the same time that a signatory employer has employees that perform work covered by a collective bargaining agreement, the employer incurs an obligation to make fringe benefit contributions to the Pension Fund <u>and</u> at the very moment that this obligation arises, the fringe benefit contributions payable to the Pension Fund become plan assets.

Company, as a party to the Labor Contract, agreed to abide by the terms of the Trust Agreement. <u>See</u>, Complaint ¶¶7-9; Exhibit 1, Declaration of Thomas Montemore, ¶¶5-6; Exhibit 2, Labor Contract, at Art. VI, Sec. 3. Under the Trust Agreement, contributions, made or to be made (i.e., unpaid but due and owing as a result of the obligation to contribute under the Labor Contract), are plan assets. Consequently, unpaid contributions, paid or payable to the Plaintiff by Company are considered plan assets.

> b.    **Defendants Exercised Control Over the Unpaid Contributions Due the Pension Fund**

Once it is determined that the unpaid contributions are plan assets, an individual -- be he corporate officer or otherwise -- may be held personally liable for a breach of fiduciary duty if he exercised authority or control over those plan assets and failed to act solely in the interests of the participants and beneficiaries of the employee benefit plan by failing to pay contributions into the plan. <u>Hall</u>, 334 F.3d at 1013; <u>Chicago Bd. of Options Exchange, Inc. v. Connecticut Gen'l Life Ins. Co.</u>, 713 F.2d 254, 259 (7th Cir. 1983); <u>Parkins</u>, 2002 U.S. Dist. LEXIS 20035 at *6; <u>Catucci</u>, 60 F.Supp.2d at 200; <u>Connors</u>, 807 F. Supp. at 1246; <u>Galgay</u>, 677 F. Supp. at 302 (M.D.Pa. 1987) (citing <u>Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.</u>, 640 F. Supp. 731, 735 (N.D.Ala. 1986)); 29 C.F.R. § 2509.75-8 (1986); <u>Rose</u>, 1995 WL 461269 at *4 (citing <u>Curcio</u>, 33 F.3d at 233); <u>Cioppa</u>, 2004 WL 2563860 at *4 (citing <u>Curcio</u>, 33 F.3d at 233).

In <u>Rose</u>, the court held that discretionary control over fringe benefit contributions designated for deposit with an ERISA fund is enough to demonstrate control over plan assets. <u>Rose</u>, 1995 WL 461269 at *5. In <u>Rose</u>, the individual defendant had decision making authority on how to distribute his company's revenues and royalties. Once the court determined that it was dealing with plan assets, the court found that the individual defendant had breached his fiduciary duty to the plaintiff pension fund by exercising control over the plan assets. <u>Id</u>, at *5-6.

Other courts have held that making a "personal, conscious choice" to withhold employee contributions shows the requisite control. <u>Connors</u>, 807 F. Supp. at 1244-46. Also indicative is a showing of broad personal discretion and control over the assets and spending practices of the corporation as well as command over when (or if) contributions are paid to an employee benefit plan. <u>Ibid</u>. <u>See also</u>, <u>Parkins</u>, 2002 U.S. Dist. LEXIS 20035 at *8-9 (person who was otherwise responsible for submitting fringe benefit contributions to the fund shown to have control over plan assets).

Still other courts have found that individuals with discretion to decide what bills would be paid or how to distribute revenues and royalties held the requisite "authority or control" to be considered fiduciaries. As the court in <u>Catucci</u> noted, once the corporation is indebted to the fund, the officer's allocation of any available monies to payment of any bills other than the contributions is a breach of fiduciary duty. <u>Catucci</u>, 60 F.Supp.2d at 203-204.

In the Complaint in the instant matter, Plaintiff alleged several facts which are indistinguishable from the foregoing and indicate that the Individual Defendant had the requisite

control and authority over plan assets.

- ◆ As the principal officer and managing agent of the Company, Individual Defendant was and is responsible for collection of monies payable to the Pension Fund resulting from labor performed by Company's employees covered under the Labor Contract. <u>See</u>, Complaint, ¶41.

- ◆ As the principal officer and managing agent of the Company, Individual Defendant was and is responsible for submitting monthly remittance reports to the Pension Fund setting forth the total amount of fringe benefit contributions owed resulting from labor performed by his employees covered under the Labor Contract. <u>See</u>, Complaint, ¶42.

- ◆ As the principal officer and managing agent of the Company, Individual Defendant had and has the authority to make decisions as to what obligations and/or payments of Company are/were to be paid to the Pension Fund, including the authority to make payments for his own personal benefit, or to creditors of the Company. <u>See</u>, Complaint, ¶43.

- ◆ At such time as fringe benefit contributions became due and payable by Company to the Pension Fund, such monies became trust assets and Individual Defendant exercised authority or control with respect to his management or disposition. <u>See</u>, Complaint, ¶45.

- ◆ Individual Defendant, through his respective position, caused and directed Company to fail and refuse to forward to the Pension Fund the monies held in trust for payment to the Pension Fund pursuant to the Labor Contract, Trust Agreements and applicable law. <u>See</u>, Complaint, ¶47.

As Defendants have not responded to each these allegations, all such factual assertions set forth by the Plaintiff in its Complaint must be taken as true. <u>Thomson</u>, <u>supra</u>, 114 U.S. at 109-112; <u>Au Bon Pain Corp.</u>, <u>supra</u>, 653 F.2d at 65; <u>Carr</u>, <u>supra</u>, 567 F. Supp. at 840; <u>Danning</u>, <u>supra</u>, 572 F.2d 1386, 1388-89.

The facts in this case clearly demonstrate that Individual Defendant is a fiduciary because each exercises(ed) discretionary control and authority over plan assets (i.e., the unpaid contributions) and that Individual Defendant has breached a fiduciary duty to the Pension Fund by failing to remit the contributions to the Pension Fund at the time they became payable to the Pension Fund. Individual Defendant was responsibility for submitting remittance reports and

corresponding fringe benefit contributions to the Pension Fund. Individual Defendant, through his position with the Company, willfully and intentionally caused and directed Company to fail and refuse to forward to the Pension Fund the monies held in trust for payment to the Pension Fund pursuant to the Labor Contract, Trust Agreement and applicable law. These monies were either paid to other creditors of the Company or were simply pocketed by the Individual Defendant. Individual Defendant, therefore, is personally liable for all fringe benefits contributions, interest, liquidated damages and attorneys' fees and costs owed by Company to the Pension Fund pursuant to the Labor Contract, Trust Agreement, Plan, and applicable law.

          c.    **Defendants owe fringe benefit contributions in the amount of $332,817.67**

Defendants have failed to submit the required contributions in the total amount of $332,817.67 for the period January 2002 through August 2006. See, Exhibit 1, Montemore Declaration, ¶9. These amounts consist of contributions from the defaulted promissory notes, contribution delinquencies from the audit and current amounts due which are estimated because the Defendants have failed to submit the contractually-required remittance reports.  The contribution amounts due are detailed in the following paragraphs.

First, Defendants owe $11,189.34 in contributions for the month of June 2005 and the period September 2005 through November 2005 based upon the defaulted January 31, 2006 Promissory Note and Personal Guarantee for employees performing work in the jurisdiction of Local Union Nos. 93, 438, 476, 841 and 1275.  Next, Defendants owe $40,753.69 in contributions for the months of September 2005 through November 2005 based upon the defaulted February 17, 2006 Promissory Note and Personal Guarantee for employees performing work in the jurisdiction of District Council No. 6.

In addition, based on an audit performed on February 21-22, 2006, Defendants owe

$112,841.91 in audit delinquencies for the period January 2002 through December 2005.  See,

Exhibit 5, Audit Report.

Finally, Defendants owe the Pension Fund at least $168,032.67 in estimated contributions

for the period of February 2006 through August 2006. The estimated contributions are calculated

by the Pension Fund based on the average of the last three months of remittance reports filed by

Company.  The contributions are estimated because Company failed to submit the required

remittance reports for that period.  See, Exhibit 1, Montemore Declaration, ¶9.

### d.    Defendants owe interest in the amount of $20,976.00

The rules and regulations as set forth in §10.12(b)(2) of the Plan set the interest rate on

delinquent contributions according to the Internal Revenue Service rate for delinquent taxes.

Interest accruing through September 30, 2006 on Defendants' delinquent contributions totals

$20,976.00 ($1,000.87 on the defaulted January 31, 2006 Note and Guarantee, $4,745.79 on the

defaulted February 17, 2006 Note and Guarantee, $12,250.80 on the audit delinquency and

$2,978.54 on the current estimated unpaid contributions).  See, Exhibit 1, Montemore

Declaration, ¶10; 29 U.S.C. §1132(g)(2)(B); 26 U.S.C. §6621. Interest will continue to accrue

until the contributions are paid.

### e.    Defendants owe late charges of $70.97

ERISA and Section 10.12(b)(5) of the Pension Plan allow for other legal or equitable

relief as the Court deems appropriate.  Article VI, Sec. 4 of the Pension Fund's Agreement and

Declaration of Trust provides for "late charges" in the form of interest on contributions paid more

than twenty days after the due date and prior to litigation.  Defendant owes $70.97 in "late

charges/interest" as a result of its late payment of contributions for the months of April 2005 through

June 2005 (Local Union No.57), June 2005 (DC 6), April 2006 through June 2006 (Local Union No. 1011) and March 2006 through May 2006 (Local Union No. 970).   Montemore Declaration, ¶12. See also, International Brotherhood of Painters and Allied Trades International Union and Industry Pension Fund v. Claser Painting Corporation, No. 91-7185, slip. op. at *1-2 (D.C. Cir. Feb. 1, 1993).

**f.    Defendants owe audit costs in the amount of $1,696.97**

The determination of an employee's eligibility for benefits is made based upon information contained on the remittance report.  An employer's liability to the Pension Fund is also based on information contained in the report.  When a remittance report is not submitted or contains incorrect information, then a proper determination of eligibility and amounts due to the Pension Fund is impossible.  In such a case, the only means of obtaining the necessary information is to review the employer's payroll records.  Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 581 (1985).

Article VI, Section 6 of the Agreement and Declaration of Trust of the Pension Fund provides for recovery of audit costs in the event that an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. On February 21-22, 2006, the Pension Fund completed an audit of the Company's payroll books and related records covering the period January 1, 2002 through December 31, 2005.  This audit revealed a consistent pattern of underpayments and non-payments of contributions to the Pension Fund.  As a result, Company is responsible for the cost of the audit. The cost of the audit is $1,696.97. Montemore Declaration, ¶9.

**g.    Defendants owe liquidated damages in the amount of $67,355.48**

ERISA and §10.12(b)(3) of the Plan's rules and regulations mandate that liquidated damages be awarded in an amount equal to the greater of interest or twenty percent (20%) of unpaid contributions due at the commencement of the lawsuit and those which become

delinquent during the course of the litigation. Article VI, Sec. 4 of the Pension Fund's Trust

Agreement also provides for the assessment of liquidated damages on contributions paid after the

due date. The total amount of liquidated damages is $67,355.48. The amount of liquidated

damages is greater than the interest due. Therefore, the amount of liquidated damages which

Defendants owe is $67,355.48. See, Exhibit 1, Montemore Declaration, ¶11; 29 U.S.C.

§1132(g)(2)(C); Exhibits 3-4, Notes and Personal Guarantees.

### h.    Defendants owe attorneys' fees in the amount of $4,979.06

Plaintiff has incurred $4,979.06 ($5,704.36 from the defaulted settlement agreement and

$4,508.29 from the current litigation) in attorneys' fees and costs in connection with this matter

through September 12, 2006. See, Exhibit 1, Montemore Declaration, ¶8; Exhibit 6, Cprek

Declaration, ¶3; Exhibit 7. See, 29 U.S.C. §1132(g)(2). The Pension Fund is entitled to

reimbursement of all attorneys' fees and costs it incurs in connection with the enforcement and

collection of any judgment entered by the Court. See, International Painters and Allied Trades

Industry Pension Fund v. H.W. Ellis Painting Co., Inc., No. 03-1125, slip. op. at *3 (D.D.C.

February 10, 2004) (citing Free v. Briody, 793 F.2d 807 (7th Cir. 1986); Trucking Employees of

North Jersey Welfare Fund, Inc. v. Bellezza Co., 57 Fed. Appx. 972 (3d Cir. 2003); Sheet Metal

Workers Health and Welfare Trust Fund v. Big D Service Co., 867 F.2d 852 (10th Cir. 1989)).

### i.    The Pension Fund is entitled to injunctive relief

The failure of Defendants to comply with their contractual and statutory obligations

results in a substantial adverse impact on the Pension Fund's ability to meet its legal obligations.

The Pension Fund is obligated by express mandates of ERISA and by the documents and

instruments by which it is administered to provide benefits and pension credits to all of

Company's employees who are otherwise eligible to receive them. 29 C.F.R. 2530-200b-2(a)(1)

and (2); <u>Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight,</u>

<u>Inc.</u>, 511 F.Supp. 38 (D.Minn. 1980), <u>aff'd</u> <u>sub.</u> <u>nom.</u>, <u>Central States, S.E. & S.W. Areas Pension</u>

<u>Fund v. Jack Cole-Dixie Highway Co., Inc.</u>, 642 F.2d 1122 (8th Cir. 1981). The Pension Fund is

required to provide these benefits and credits regardless of whether Defendants make the

contributions. For example, if employees perform work covered by the collective bargaining

agreement, the Pension Fund has affirmative obligations to credit hours for retirement benefits

regardless of whether a signatory employer makes contributions to the Pension Fund. The result

of Company's non-compliance with ERISA and the Labor Contract is a significant drain on the

Pension Fund's resources.

Additionally, where, as here, Defendants fail to remit their contributions, the Pension

Fund loses the income that it would have earned by investing those contributions. Combining

this loss of investment income with the Pension Fund's requirement to continue paying benefits

to Company's employees (as well as to the employees of other signatory contractors) will

eventually affect the actuarial soundness of the Pension Fund as well as deplete the resources

available to pay current pension benefits.

Furthermore, the Pension Fund incurs additional administrative expenses as a result of

Defendants' failure to pay their contributions. These losses and added expenses significantly

impair the Pension Fund's ability to continue to provide benefits to not only Company's

employees, but also to employees of companies that comply with their contractual obligations.

In light of Defendants' failure to comply with their contractual and statutory obligations

to the Pension Fund to submit timely, accurate remittance reports and pension contributions each

month, and the irreparable harm which Defendants' malfeasance causes the Pension Fund, the

Pension Fund respectfully requests the injunctive relief which is set forth in its proposed default

judgment. Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir.

1981); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc. , 4 EBC 1199, 1200

(D.D.C. 1983); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640

F.Supp. 223 (D.D.C. 1986).

**B.     COMPANY SHOULD BE ORDERED TO PRODUCE THE
        APPROPRIATE RECORDS TO ALLOW THE PENSION FUND TO
        AUDIT ITS PAYROLL BOOKS AND RELATED RECORDS AND
        DEFFENDANTS MUST PAY ANY ADDITIONAL AMOUNTS FOUND TO
        BE DUE AND OWING**

The determination of an employee's eligibility for benefits is made based upon

information contained in the remittance report, to be filed monthly by each and every signatory

employer. A proper determination of eligibility is not possible if remittance reports are not

submitted or if they contain incorrect information. See, 29 U.S.C. §1132(g)(2)(E) (equitable

relief); Teamsters Local 639 – Employers Trust v. Jones & Artis Construction Co., 640 F.

Supp.223 (D.D.C. 1986); IBPAT Union and Industry Pension Fund v. Hartline – Thomas, Inc., 4

EBC 1199, 1200 (D.D.C. 1983); Laborers' Fringe Benefit Pension Fund v. Northwest Concrete,

640 F. 2d 1350, 1352 (6th Cir. 1981).

In order to determine whether the contributing employer has made all required

contributions and correctly reported hours worked and paid to its employees, the Pension Fund

has the right to review all of the employer's records that relate to its contributory obligation.

Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105

S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit

the Pension Fund's auditors to review those records upon request. Michigan Laborers' Health

Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994).

In the present case, the Labor Contract and Trust Agreement obligate Defendants to allow the audit. See Exhibit 1, Montemore Declaration, ¶¶5, 6, 13-14; Exhibit 2, Labor Contract, Art. VI, Sec. 3; Complaint, Exhibit 1, Art. VI, Sec. 6.  The scope of records subject to review is broad, and include those records the auditors reasonably deem necessary to conduct an audit. DeMarco v. C & L Masonry, 891 F.2d 1236 (6th Cir. 1989). See Exhibit 1, Montemore Declaration,  ¶¶13-14. In addition to the routine payroll records (e.g., time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. Ibid.

An audit is necessary in this case in order to determine the exact amount due to the Pension Fund because of Defendants' failure to submit contractually-required remittance reports and furthermore, to ensure that the remittance reports submitted by Defendants are correct. See Exhibit 1, Montemore Declaration, at ¶¶5-7, 13-14. The Company's obligations under the Agreement and 29 U.S.C. § 1145 mean nothing if the Pension Fund cannot ensure compliance through an audit. The Court should order Company to produce its records for an audit for all periods in which the Defendants are obligated to make contributions to the Pension Fund so that a precise determination of the amount owed can be made. Upon completion of the audit, the Court should enter a further judgment against Defendants for all additional amounts found to be due and owing under the Agreement and ERISA.

## CONCLUSION

Plaintiff, therefore, requests that the Court enter a judgment against Defendants, jointly and severally, in the amount of $427,896.15, which includes $4,979.06 in attorneys' fees and costs, order Defendants to submit the remittance reports and corresponding contributions

together with interest and liquidated damages for the period January 2002 through August 2006

and order Company to produce its payroll books and related records for an audit for all periods in

which the Company is obligated to make fringe benefit contributions to the Pension Fund.

     In light of the clear statutory intent of ERISA, it is respectfully requested that this Court

grant the Pension Fund the relief requested in the Motion for Default Judgment.

                Respectfully submitted,

                JENNINGS SIGMOND, P.C.

          BY: s/ Kent Cprek
                KENT CPREK
                Bar No. 478231
                SANFORD G. ROSENTHAL
                Bar No. 478737
                The Penn Mutual Towers, 16th Floor
                510 Walnut Street, Independence Square
                Philadelphia, PA 19106-3683
                (215) 351-0615/0669
                Attorneys for the Fund

Date: September 28, 2006
OF COUNSEL:
Jessica L. Tortella
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0669