IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND )<br>)<br>)<br>Plaintiff,   )<br>v.   )<br>)<br>ALLSTATE PAINTING & CONTRACTING CO. )<br>f/k/a Allstate Painting & Sheeting Co. *et al.*   )<br>)<br>Defendants   ) | CIVIL ACTION NO. 06-1211 (RBW) |

### DECLARATION OF THOMAS MONTEMORE

THOMAS MONTEMORE states and declares the following:

1. My name is Thomas C. Montemore and I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2. The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Brotherhood of Painters and Allied Trades, AFL-CIO-CFL ("Brotherhood"), and employers in private industry whose employees are members of or otherwise represented by the Brotherhood and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

172665_1.DOC



3. I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4. The Pension Fund, as part of its normal operating procedure, maintain files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5. My review of the regular business records maintained by the Pension Fund reveals that Defendant, Allstate Painting & Contracting Co. f/k/a Allstate Painting & Sheeting Co. ("Company"), is currently a contributing employer of the Pension Fund and is bound to a collective bargaining agreement ("Labor Contract") with the International Brotherhood of Painters and Allied Trades, AFL-CIO, CLC. True and correct copies of relevant provisions of the Labor Contract are attached as Exhibit 2. Under the terms of the Labor Contract, Company is bound to the Trust Agreement and Plan. See, Exhibit 2, Labor Contract, Art. VI, Sec. 3.

6. The collective bargaining agreement requires Company to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

172665_1.DOC

7. Elias Kafantaris ("Individual Defendant" and jointly with Company, "Defendants") is an officer and shareholder of the Company. See, Exhibits 3 and 4, a true and correct copy of the Promissory Note and Personal Guarantee signed by him which he indicates that he is the President of the Company.

8. The Company previously incurred contribution delinquencies to the Fund. In settlement of those delinquencies, the Company and Individual Defendant entered into settlement agreements with the Fund on January 31, 2006 and February 17, 2006. The January 31, 2006 Promissory Note and Personal Guarantee was for the principal sum of $17,781.01 for work performed by union employees in the jurisdiction of IUPAT Local Union Nos. 93, 438, 476, 841, and 1275. The February 17, 2006 Promissory Note and Personal Guarantee was for the principal sum of $55,428.61 for work performed by union employees in the jurisdiction of District Council No. 6 ("DC 6"). The failure to timely remit either any installments under the Notes or future fringe benefit contribution payments to the Pension Fund were among the grounds for default under the terms of the settlement. Individual Defendant personally guaranteed payment of the settlements and the Company's other contributory obligations. Defendants breached the terms of the Promissory Notes and Personal Guarantees by failing to make one or more installment payments under the Notes to the Pension Fund and by failing to pay ongoing fringe benefit contribution payments to the Pension Fund. As such, the Individual Defendant is personally liable for all amounts due by the Company. The remaining unpaid contributions due based on the January 31, 2006 and February 17, 2006 Promissory Notes total $51,943.03 ($11,189.34 and $40,753.69).

9. Based upon an audit performed on February 21-22, 2006, covering the period January 1, 2002 through December 31, 2005, Defendants owe $112,841.97 in unpaid

172665_1.DOC

contributions. In addition, Article VI, Section 6 of the Agreement and Declaration of Trust of the Pension Fund provides for recovery of audit costs in the event that an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. The audit performed revealed a delinquency and consequently Defendant owes $1,696.97.

10. Defendants failed to submit the contractually required remittance reports and contributions to the Pension Fund for the period of February 2006 through August 2006. Since Defendants failed to submit the required remittance reports, the Fund has estimated that the Company owes contributions for the period in at least the amount of $168,032.67. The estimated monthly contributions for this period are based on the average of the three monthly contributions due immediately preceding the period for which no report(s) were filed.[1]

11. Defendants owe interest through September 30, 2006 in the amount of $20,976.00 on the unpaid pension contributions set forth in ¶¶8-10 and on the contributions paid past the due date. The interest has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan.

---

[1]
**District Council 6 –**

| | |
|---|---|
| $30,061.15 | 09/05 – 2 reports $24,788.67 and $5,272.48 |
| $16,407.27 | 10/05 - 3 reports $13,672.28, $2,059.30, and $675.69 |
| $ 2,401.90 | 11/05– 1 report |

$48,870.32 divided by 3 = $16,290.11 x 7 months = $114,030.77

**Local Union 6 –**

| | |
|---|---|
| $1,672.50 | 06/05 |
| $1,839.50 | 07/05 |
| $2,461.85 | 08/05 |

$5,973.85 divided by 3 = $1991.29 x 6 = $11,944.74

**Local Union 438 –**

| | |
|---|---|
| $ 5,040.00 | 08/05 |
| $ 5,205.00 | 09/05 |
| $ 2,040.00 | 10/05 |

$12,285.00 divided by 3 = 4,095.00 x 6 = $24,570.00

**Local Union 1011 –**

| | |
|---|---|
| $ 3,362.40 | 05/06 |
| $ 4,509.60 | 06/06 |
| $ 4,975.20 | 07/06 |

$12,847.20 divided by 3 = $4,284.40

**Local Union 970 –**

| | |
|---|---|
| $   480.00 | 03/06 |
| $ 5,405.00 | 04/06 |
| $ 4,470.00 | 05/06 |

$10,355.00 divided by 3 = $3,451.67 x 2 = $6,903.34

**Local Union 476 –**

| | |
|---|---|
| $1,209.60 | 08/05 |
| $1,346.80 | 09/05 |
| $   246.40 | 11/05 |

$2,802.80 divided by 3 = $934.27 x 6 = $5,605.62

172665_1.DOC

12. Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendants in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. As noted above, the total interest owed through September 30, 2006 is $20,976.00. Twenty percent (20%) of Defendants' unpaid contributions and contributions paid past the due date total $67,355.48. Since the total amount of liquidated damages is greater than the interest amount, Defendants owe $67,355.48 in liquidated damages.

13. § 10.12 of the Pension Fund's rules and regulations parallels the ERISA statute, 29 U.S.C. §1132(g)(2), and allows other legal or equitable relief as the Court deems appropriate. Article VI, § 4 of the Pension Fund's Agreement and Declaration of Trust (attached to the Complaint as Exhibit 1 and incorporated herein by reference) provides for "late charges" in the form of interest on contributions paid more than twenty days after the due date and prior to litigation. Defendant owes $70.97 in "late charges/interest" as a result of its late payment of contributions for the months of April 2005 through June 2005 (Local Union No.57), June 2005 (DC 6), April 2006 through June 2006 (Local Union No. 1011) and March 2006 through May 2006 (Local Union No. 970).

14. The Pension Fund routinely audits employers to ensure all required contributions are being paid. It also audits employers in connection with delinquency collection lawsuits. An audit is the most accurate tool employed by the Pension Fund to ensure an employer's compliance with its statutory obligations. In performing these audits, the auditor reviews the payroll records of each employee who performs work of the type covered by the collective bargaining agreement. These records will include time cards, payroll ledgers, payroll summaries, time slips, or such other payroll records as the employer maintains which will indicate the

172665_1.DOC

number of hours that each individual employee worked and was paid for each week. The information gathered from these records is then compared to the wage information found on the employer's federal, state and municipal tax returns and on the W-2 statements provided to the employees. The auditor also reviews disbursement ledgers and check registers to identify potential wage payments to employees not made through the payroll system. Job/project contracts are reviewed to determine whether the work performed is within the scope of the collective bargaining agreement. After compiling the information gathered from the above records, a schedule of the contributions that should have been paid according to the contract is prepared. This schedule, which is broken down by month, is then compared to the actual contributions which the employer did submit to the Pension Fund, with any differences noted. Once completed, an audit report is forwarded to the employer for its review and payment.

15.  Despite a continuing contractual obligation to do so, Defendants have repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund and its Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf for these hours, as contractually required. The Pension Fund's obligation to recognize pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. Employer contributions <u>and</u> the earnings the Pension Fund receives by investing these contributions comprise the assets from which the Pension Fund pays retirement benefits to participants and their dependents and beneficiaries. When employers, like Company, fail to pay their contributions or do not pay them timely, the Pension Fund is deprived of the investment income

172665_1.DOC

they otherwise could have earned. In addition, the Pension Fund also must engage in time-consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. Further, the Pension Fund has to process benefit eligibility and benefit claims manually so that participants (and their dependents) employed by the delinquent employer are not deprived of retirement benefits. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Pension Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendants' refusal to contribute as they are bound means irreparable harm and injury to the Pension Fund – an obligation to make benefit payments to employees without necessary contributions from Defendant to cover those benefits. Therefore, Defendants should be required to submit timely current contributions and remittance reports in the future.

16. I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendants and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Complaint and other facts stated in this Declaration.

Pursuant to 28 U.S.C. §1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: 9/27/06

THOMAS MONTEMORE