## ARTICLE XXVII - AGREEMENT QUALIFICATIONS

It is not the intent of either party hereto to violate any laws or any rulings or regulations of any Governmental authority or agency having jurisdiction of the subject matter of this Agreement, and the parties hereto agree that, in the event any provision of this Agreement is held to be unlawful or void by any tribunal having the right to so hold, this Agreement, on proper notice from either party, shall be reopened for the sole purpose of amending such provision or provisions, with the understanding that the remainder of the Agreement shall remain in full force and effect.

   **IN WITNESS WHEREOF,** the parties hereto execute this Agreement as of the day and year noted above.

SIGNED FOR THE GENERAL EXECUTIVE
BOARD OF THE INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES, AFL-CIO, CLC

BY:

_____
Michael E. Monroe
General President

May 1, 2001
Date

SIGNED FOR THE EMPLOYER
ALL-STATE PAINTING & CONTRACTING CO.

BY:

_____   Elias Kafantaris
Ellies Kasfantaris
President

4-25-01
Date

14



## ARTICLE XXVII - AGREEMENT QUALIFICATIONS

It is not the intent of either party hereto to violate any laws or any rulings or regulations of any Governmental authority or agency having jurisdiction of the subject matter of this Agreement, and the parties hereto agree that, in the event any provision of this Agreement is held to be unlawful or void by any tribunal having the right to so hold, this Agreement, on proper notice from either party, shall be reopened for the sole purpose of amending such provision or provisions, with the understanding that the remainder of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto execute this Agreement as of the day and year noted above.

SIGNED FOR THE GENERAL EXECUTIVE
BOARD OF THE INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES, AFL-CIO, CLC

BY:

_____
Michael E. Monroe
General President

_____
March 24, 2002
Date

SIGNED FOR THE EMPLOYER
ALL-STATE PAINTING & CONTRACTING CO.

BY:

_____
ELIAS Ellies Kasfantaris    Elias Kafantaris
President

_____
3-4-02
Date

14

## ARTICLE XXVII - AGREEMENT QUALIFICATIONS

It is not the intent of either party hereto to violate any laws or any rulings or regulations of any Governmental authority or agency having jurisdiction of the subject matter of this Agreement, and the parties hereto agree that, in the event any provision of this Agreement is held to be unlawful or void by any tribunal having the right to so hold, this Agreement, on proper notice from either party, shall be reopened for the sole purpose of amending such provision or provisions, with the understanding that the remainder of the Agreement shall remain in full force and effect.

This Agreement shall be in full force and effect from *March 1, 2006*, up to and including *February 28, 2007* and shall continue from year to year thereafter unless written notice of desire to modify the or terminate the Agreement is served by either party to the other not less than sixty (60) days prior to any anniversary date.

   IN WITNESS WHEREOF, the parties hereto execute this Agreement as of the day and year noted above.

SIGNED FOR THE GENERAL EXECUTIVE
BOARD OF THE INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES, AFL-CIO, CLC

BY:

*[signature]*
_____
James A. Williams
General President

*Feb. 8, 2006*
_____
Date

SIGNED FOR THE EMPLOYER
ALLSTATE PAINTING & CONTRACTING CO.

BY:

*[signature]*
_____
Ellies Kafantaris
President

*2-3-06*
_____
Date

NATIONAL BRIDGE AND TUNNEL AGREEMENT

BETWEEN

INTERNATIONAL UNION OF PAINTERS
AND ALLIED TRADES, AFL-CIO, CLC

RECEIVED
APR 3 0 2001
GEN PRESIDENT

AND

ALL-STATE PAINTING & CONTRACTING CO.

## ARTICLES OF AGREEMENT

This Agreement, executed March 1, 2001 by and between the International Union of Painters and Allied Trades, AFL-CIO, CLC (hereinafter referred to as the "IUPAT") and *All-State Painting & Contracting Co.* (hereinafter referred to as the "Employer") shall be in full force and effect for a period of one year from the above date and shall continue from year to year thereafter unless notice of termination or modification is given in writing by either party to the other at least sixty (60) days prior to any anniversary date.

## ARTICLE I - RECOGNITION

The Employer recognizes the International Union of Painters and Allied Trades, AFL-CIO, CLC (IUPAT) as the sole and exclusive bargaining representative for all employees in the employment of the Employer, on any and all work covered by this Agreement with respect to wages, hours, and other terms and conditions of employment.

## ARTICLE II - SCOPE OF AGREEMENT

*Section 1.*    The scope of work covered for this agreement shall be as set out in the attached *"Addendum"*.

*Section 2.*    The IUPAT recognizes that the Employer may be signatory to other Collective Bargaining Agreements and further, that work assignments vary in different areas of the country. Work may be assigned in accordance with historic practices in the area where the work is to be performed. Where more than one craft has historically performed work of a given category, the work may be assigned to that craft that has performed the predominant amount of work for the employer in that category and in that area.

*Section 3.*    This Agreement shall take precedence over all District Council, Local Union, Statewide or Region-Wide Agreements unless otherwise stated herein.

**Section 4.**     All other work performed by the Employer which is not spelled out in Section 1 and 2 of this Article and coming within the work jurisdiction of the IUPAT as presently set forth in its Constitution shall be performed and governed by the Local Collective Bargaining Agreement of any subordinate body of the IUPAT which is applicable in the area where the work or job is to be performed.

**Section 5.**     Since an essential part of this Agreement is to recover, for the IUPAT and its National Contractors, work that has gone non-union, and to maintain work that is Union, the parties agrees as follows: Where it is determined that at least ninety percent (90%) of all of the work described in **Article II, Section I** of this Agreement is currently being performed by members of an affiliated District Council or Local Union of the IUPAT within their granted territorial jurisdiction, then this Agreement shall not apply. It is further agreed that the terms and conditions of the Collective Bargaining Agreement currently in effect within the territorial jurisdiction of an affiliated District Council or Local Union of the IUPAT shall prevail when it is determined by the International that this Agreement does not apply.

## ARTICLE III - NULL AND VOID

This Agreement will become null and void at any time the Employer is not signatory to the Collective Bargaining Agreement of the District Council or Local Union having jurisdiction of the geographic area where the Employer's principle place of business is located.

## ARTICLE IV - FUNCTION OF MANAGEMENT

**Section 1.**     In the exercise of its functions of management, the Employer shall have the right to plan, direct and control operations of all its work, hire employees, direct the working forces in the field, assign employees to their jobs, discharge, suspend or discipline for proper cause (*proper cause for discharge includes but is not necessarily limited to incompetence, insubordination, habitual tardiness or absenteeism*) transfer, promote, demote, or lay off employees because of the lack of work, or for other legitimate reasons, require employees to observe the Employer's and/or contracting entities, rules and regulations not inconsistent with this Agreement, institute a fair and consistent drug policy, regulate the amount of equipment used and the use of equipment and other property of the Employer, decide the number of employees needed; provided, however, that the Employer will not use its rights for the purpose of discrimination against any employee.

**Section 2.**     On work as defined under **Article II**, the Employer and the IUPAT recognize the necessity of promoting efficiency and agree that no Local rules, customs or practices shall be permitted that limit production or manpower required to do the work and that no limitations shall be placed on the amount of work which an employee is performing during the work day. No regulations of tools shall be interpreted or enforced in any way to prevent their use where required or necessary to perform an acceptable job in accordance with specifications of the appropriate agency and where all proper safety regulations are enforced.

**Section 3.**     The IUPAT agrees that in those situations where presently the jurisdiction of work is divided between two or more District Councils or Local Unions, the IUPAT's General Executive Board will, upon request from either the District Council or Local Union or Employer, determine what District Council or Local Union will have jurisdiction of the work in question.

## ARTICLE V – HIRING PRACTICES & ASSIGNMENT OF EMPLOYEES

***Section 1.*** The assignment of employees and hiring practices covered for this agreement shall be as set out in the attached *"Addendum"*.

***Section 2.*** Regular employees of the Employer transferred from one locality to another by the Employer shall be privileged to exercise their normal functions and shall conform and comply with the provisions of this Agreement. These regular employees will not be required to deposit clearance cards in any Local Union unless they elect to do so of their own accord. The Employer will submit to the appropriate District Council or Local Union having jurisdiction of the area where the job is located a listing of all regular employees, on a weekly basis when requested. In addition to this list, a complete listing of all employees will be submitted to the appropriate District Council or Local Union having jurisdiction of the area where the job is located on a weekly basis.

***Section 3.*** Qualified employees shall mean that they are experienced in performing the type of work required and/or able to perform said type of work. All employees on all work performed under this Agreement must be qualified and certified as per the bid specifications for manpower qualifications required by the contracting agencies. This shall be the sole responsibility of the Employer to see that all employees are certified as required.

## ARTICLE VI- WAGES, FRINGES, SUBSISTENCE & WORKING CONDITIONS

***Section 1.*** The wages, fringes, subsistence and working conditions covered for this agreement shall be as set out in *Schedule "A"* in the attached *"Addendum"*.

***Section 2.*** After the Employer has been awarded the job or the operation has commenced on a project, no subsequent change in wages or working conditions in such area will become effective insofar as the Employer is concerned, except for (1) deferred wage increases, and (2) negotiated wages or fringe benefit payment increases by the bargaining parties in the area. It is expressly agreed that when any work is performed in any area during a renegotiation period, the negotiated increase, if any, shall be paid retroactively back to the termination date of the previous area Agreement. There shall be no lockout by the Employer occurring during the period of negotiations.

***Section 3.*** The Employer when working in the jurisdiction of the District Council or Local Union affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC, where the projects are located, shall, with respect to employees hired from within said jurisdiction, make contributions on behalf of such employees to all pension, health, welfare, apprenticeship and training, and other fringe benefit funds provided for in the Collective Bargaining Agreement currently in effect between said District Council or Local Union and area contractors. On all employees the Employer brings into said area, the Employer shall make such contributions to their "home" fringe benefit funds as are provided for in the Collective Bargaining Agreement of the employees' "home" District Council or Local Union. For the foregoing purpose, the Employer hereby:

> (a) Agrees that such contributions shall be made at the rate, in the manner and under the terms and conditions specified in the applicable Collective Bargaining Agreement;

3

IN WITNESS WHEREOF, we the undersigned EMPLOYER and District Council No. 6, International Union of Painters and Allied Trades, hereunto affix our hands this day of June 1, 2001.

_Allstate Painting_
_____ Company Name

x _____
Employer's Signature

06-04-02

DISTRICT COUNCIL NO. 6
INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES, AFL-CIO.

_____ Executive Secretary

IN WITNESS WHEREOF, we the undersigned duly authorized representatives of the Northern Ohio Painting and Taping Contractors Association, Inc., and District Council No. 6, International Union of Painters and Allied Trades, hereunto affix our hands as such representatives for and in behalf of such organizations, their officers and agents and members, at Cleveland, Ohio on this first day of June, 2001.

| DISTRICT COUNCIL NO. 6 & INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES AFL/CIO | NORTHERN OHIO PAINTING & TAPING CONTRACTORS ASSOCIATION, INC. |
|---|---|
| Terrance J. Conroy | Don Hansen |
| Jeffery Newbould | Nick Pontikos |
| Terrence O'Neil | Brad Pinchot |
| Stephen Protz III | Henry Oestrike |

10

22-2006 THU 01:22 PM   PAINTERS ALLIED TRADES   FAX No. 4402346527   P. C01

_Allstate Painting_
Company Name

_[signature]_
Contractor's Name

1152
~~804F~~
Shop Number

# WORKING AGREEMENT

BETWEEN

INTERNATIONAL UNION OF PAINTERS AND ALLIED
TRADES AFL-CIO DISTRICT COUNCIL NO. 6 OF
CLEVELAND, OHIO

AND

NORTHERN OHIO PAINTING AND TAPING
CONTRACTORS ASSOCIATION, INC.
CLEVELAND, OHIO

2001-2005

# INDEX

| Classification | Article Section page |
|---|---|

Article I .................................................................1
    Recognition and Coverage of Agreement

Article II ................................................................2
    Rules for Employers

Article III ...............................................................4
    Wages and Hours

Article IV ...............................................................7
    Fringe Benefits

Article V ................................................................9
    Spray Painting and Safety

Article VI ..............................................................10
    Taping

Article VII .............................................................10
    Joint Trade Board

Article VIII ............................................................12
    Cost Finding

Article IX ..............................................................12
    Placement Committee

Article X ...............................................................12
    Grievance Procedure

Article XI ..............................................................13
    Joint Labor – Management
    Uniform Drug/Alcohol Abuse Program

Article XII .............................................................16
    Apprentice Education and Promotion Program

must be considered a home town Employee, whether he is ordered to the job or is hired out on the job site. The Employer party hereto shall, when engaged in work outside the geographical jurisdiction executed by the Employers of this industry and the affiliated Local Unions in that jurisdiction, including wages, hours, conditions, fringe benefits and grievance procedures set forth therein provided, that as to members of District Council No. 6 who are brought into an outside jurisdiction shall be entitled to receive all wages and conditions effective in either the home or outside jurisdiction, whichever is more favorable for the Employee.

(d) In order to provide continuity of coverage: Employer fringe benefit payments shall be made only to the funds in the employees home area as required by the Collective Bargaining Agreement prevailing in that area. There shall be no duplication of any fringe fund payment requirements.

Section 10 - **Method and Time of Paying Wages.** (a) Employees shall be paid once each week in currency or by check and shall receive their pay on the job not later than quitting time on pay-day.

(b) Employees temporarily laid off because of job completion are to receive their pay on the regular pay-day.

(c) Employers not signatory to the local Working Agreement when employees are laid off or discharged they shall be paid in full at the time of said lay-off or discharge. If employee is not paid off then Section C will apply. Out of Town employers laid off is pay-off.

(d) If an Employee voluntarily quits a job, it is his/her responsibility to report his/her time to the Employer immediately, and shall be paid on the regular payday. Employees discharged for cause shall be paid within twenty-four (24) hours and the Employer is responsible for the delivery of the check. If the check is not received within twenty-four (24) hours, the Employee shall receive eight- (8) hours pay for each twenty-four- (24) hour waiting period, Saturday and Sunday excluded.

(e) Wage and fringe differences, including Health-Welfare, Pension and Promotion, shall be reported within four (4) weeks of the first infraction.

(f) Any Employee, for any reason, who does not get the paycheck by the regular payday Section C above, will apply.

Section 11 - **Retaining Pay.** No more than three- (3) days pay shall be retained by the Employer at the end of the working week.

Section 12 - Employees shall be paid up to five dollars ($5.00) per day per Employee when there is no free parking. Receipts must be turned in.

## Article IV
## FRINGE BENEFITS

Section 1 - The Employer agrees to be subject to the provisions of the agreements and declarations of trust and/or other governing instruments of the Painting Industry Insurance Fund, the Painting Industry Profit Sharing Annuity Plan, International Painters and Allied Trades Industry Pension Fund, t Apprentice Education and Industry Promotion Fund and a other fringe benefit, industry and related funds or accounts esta lished by the parties to this Agreement (collectively the "Func or "Plans").

a. The Employer shall also be bound by the terms, provisic and conditions of all rules, regulations, resolutions and amer ments thereto promulgated by the Trustees of the Plans in accc dance with the aforesaid Trust Agreements, whether curren existing or promulgated during the term of this Agreement.

b. The Employer hereby accepts the designation of t Employer Trustees of the Plans and any successor Truste appointed in accordance with the provisions of the Tru Agreements.

c. The Employer acknowledges that the Plans provide cov age and benefits to and the Employer is obligated to make co tributions for and on behalf of all its employees who are mei bers of the collective bargaining unit represented by the Unic without regard to membership in the Union.

d. The participating Employers and the Union further acknov edge and agree that the Trustees shall have the sole and exclusi authority to determine the rules of eligibility to participate in sa plans and the benefits and coverages to be provided therein. N person shall have a vested right to participate in any Plan or receive any benefit or coverage from any Plan except as expres ly stated therein.

Section 2 – a. **Annuity.** There is established within the fram work of the Painting Industry Collective Bargaining Agreemei an Employer-paid Defined Contribution Plan hereinafter calle the Painting Industry Profit Sharing Annuity Plan, to which i Employers shall pay in excess of the regular established wage, i amount as established by this Agreement for every hour work commencing May 1, 2001 for their bargaining unit employe covered by this Agreement.

b. **Health and Welfare.** There is established within the fram work of the Painting Industry Collective Bargaining Agreemei an Employer-paid Health and Welfare Plan hereinafter called t PAINTING INDUSTRY INSURANCE FUND, to which i Employers shall pay in excess of the regular established wage, amount as established by this Agreement per hour for every ho worked commencing May 1, 2001, for their bargaining ui employees covered by this Agreement. Such payments shall used for the maintenance and operation of the Health and Welfa Plan.

Section 3 - International Painters and Allied Trades Indus Pension Fund.

a. Commencing with the first day of October 2001, and for i duration of the Agreement, and any renewals or extension the of, the Employer agrees to make payments to the Internatio Painters and Allied Trades Industry Pension Fund (IUP Industry Pension Fund) for each employee covered by t Agreement, as follows:

b. For each hour or portion thereof for which an emplo

receives pay, the Employer shall make a contribution of $3.00 to the above named Pension Fund. May 1, 2002 - $3.45, May 1, 2003 - $3.90, May 1, 2004 - $4.35. The contribution rates set forth in this paragraph can be reduced pursuant to the Merger Agreement entered into between the Trustees of the International Painters and Allied Trades Industry Pension Fund and Trustees of Painting Industry Pension Plan executed on or about October 15, 2001.

c. For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable. For the purpose of this Agreement the contributions on overtime hours will be payable on only actual hours worked.

d. Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes but is not limited to apprentices.

e. The payments to the Pension Fund required above shall be made to the IUPAT Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

f. The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

g. All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the provisions of this Agreement or said Declaration of Trust.

Section 4 – The payments shall be made by the Employer monthly, no later than the 15th day of the month following the end of the month when bargaining unit employees performed work, with a weekly breakdown of the hours, names of the Employees and their social security numbers, hours worked, on forms specifically provided for this purpose by Trustees of the Fringe Benefit Funds. It shall be the obligation of the Employer to have and use the official reporting forms. If the Employer maintains its payroll records and information on computer or electronic equipment and desires to use and submit the required information in the form printed out by the computer or other electronic equipment, the Employer may use and submit such forms other than official reporting forms; provided, however, the Trustees shall have the right to reject such forms if they are not consistent or reconcilable with the official form.

Section 5 - If the Board of Trustees of the Health and Welfare Fund believe additional contributions or payments are needed during the term of this Agreement to operate the Health and Welfare Fund, the Trustees shall recommend such change in writing to the parties to this Agreement.

Section 6 - The payments made to the Funds in accord[ance] with the terms of this Agreement shall be sent with the appropri[-] ate reporting form to the designated depository when due. [In] reporting periods in which the Employer did not have [any] Employees working, he shall submit a reporting form marked "NO EMPLOYEES WORKING". If the Employer has complet[-] ed all work in the jurisdiction covered by this Agreement and w[ill] not have Employees working in the jurisdiction thereafter, [he] shall note on the reporting form for his last reporting peri[od] "WORK COMPLETED - FINAL REPORT".

Section 7 - The failure of an Employer to pay the contribution[s,] payroll deductions, delinquency assessments or other mon[ies] required here-under, when due, shall be a violation of t[he] Agreement as well as a violation of said Employer's obligation[s] under the agreements and declarations of trust. Nonpayment [by] an Employer of any contributions, payroll deductions, delin[-] quency assessments or other monies when due, shall not reli[eve] any other employer of the obligation to make payment of s[ame] when due. In the event that an Employer submits a check [in] payment to the Funds and it is returned by his bank stamp[ed] "Insufficient Funds", said check must be replaced, and [the] Trustees may require that future payments must be made [by] either certified check, cashier's check or money order.

Section 8 - An Employer who is delinquent in making pay[-] ments as herein required or who fails to send the reports on ti[me] shall be assessed as liquidated damages, a delinquency asses[s-] ment of ten percent (10%) of the total amount due plus one [and] one-half percent (1.5%) of the total due per calendar mo[nth] thereafter. Provided, however, that with respect to delinquen[cies] to the IUPAT Industry Pension Fund a delinquent employer [shall] be assessed liquidated damages, interest and late fees in acc[or-] dance with the IUPAT Pension Fund's Trust Agreement [and] Rules and Regulations.

Section 9 - Whenever an Employer is delinquent, the F[und] Administrator shall, within ten (10) days after becoming aw[are] or otherwise being notified of the delinquency, notify the Sur[ety] Company which supplied the bond for that Employer of the [fact] of said delinquency and shall at the same time send a copy [of] such notice to the Association and Union.

Section 10 - Whenever an Employer is delinquent, the Un[ion] may, upon seventy-two (72) hours written notice to the delin[-] quent Employer, withdraw Employees from the employment [of] the Employer, until such amounts that are due and owing [are] paid, without such withdrawal being considered a breach of [any] of the provisions of this Agreement, provided the Employer [fails] to show adequate proof that the delinquent amounts have b[een] paid to the Funds.

a. Each Employer agrees to permit an audit or examination [of] such books, records, papers or reports of the Employer as ma[y be] necessary in the discretion of the auditor, to determine whe[ther] the Employer is making full and prompt payment of all su[ms] required to be paid to the Funds. The audit of examination sh[all] be performed by an auditor or agent designated by the repre[sen-] tative of the Funds. If, as a result of said audit or examinatio[n a] deficiency or more in payments to a Fund is discovered, [the] Funds may assess their costs in performing the audit or exami[na-] tion to the Employer, and said cost shall be collectible a[s]